24-301 U.S. v. Tyrone Santos Thank you, Your Honor. Good morning, Your Honors. May it please the court. Amanda Shammy for the United States. The district court here erred when it concluded that the Vernon affidavit was a bare-bones affidavit that rendered the officer's reliance on it unreasonable, such that the good-faith exception did not apply. The district court misapplied the law and compounded its error by concluding, based on a single sentence in the Vernon affidavit that the district court determined was already immaterial, that Inspector Vernon evinced an intent to mislead. The district court concluded this even though it expressly recognized that there was an incomplete record. Did you understand the district court's ultimate determination to hinge on that finding, or did the district court conclude that, on its face, the affidavit was bare-bones such that the officer wouldn't be entitled to rely on the magistrate's issue to the warrant? The district court did both, Your Honor. In the first instance, it found that there was a bare-bones affidavit, which, of course, the government contests because the law on bare-bones is quite clear and what was presented was not a bare-bones. But I'll return to that. The court then determined that because the law on deterrence and the impact of the exclusionary rule is such that, if it were to apply, the court would need to find some kind of culpability sufficient that it would outweigh the impact to the truth-seeking function of justice. Here, it needs to be sufficiently culpable. And in this instance, it would require deliberate, reckless, or grossly negligent conduct. And that is how the court looked at the Vernon affidavit, looking for some kind of deliberate conduct, and it landed on paragraph 22, a single sentence in the affidavit that the court decided had two misleading statements in it. Even though, as the government highlights in its brief, those two misstatements are no such thing. So even if we agree, well, let's say, even if we agree that it was not misled, you still have the bare-bones problem. Yes, Your Honor. In as much as the court has characterized it as a bare-bones affidavit, but the law from the Supreme Court and the law in this circuit have made it very clear what a bare-bones affidavit is. A bare-bones affidavit is simply a warrant that says this individual committed a crime, and I believe that there should be evidence in this location. Can I ask the affirmative statement? You do a lot of distinguishing among cases, but I would like to know what the principle you'd like us to apply as to the bare minimum facts necessary to provide us a sufficient indicia of probable cause. Yes, Your Honor. So for a warrant to have sufficient probable cause or to have probable cause plainly, because, Your Honor, probable cause is a light switch. It is either there or it's not, and so this idea that there needs to be a quantum of probable cause in order for a search warrant to be signed is not quite correct. What it needs to contain is probable cause that the person committed the crime and that there's probable cause that the place to be searched might have fruits, instrumentalities, or evidence of that crime. And that latter point is really key because the court's determination that it was a bare-bones affidavit hinged on this misapplication of the law. The court determined that because there was no evidence in the warrant... But is that really fair? I mean, I agree that the district court mischaracterized the law. It certainly doesn't have to be an instrumentality. But the warrant, the affiant said it. The affiant said, in my experience, people use these phones to sell. So at that point, it becomes a bit muddled, and I want to know what do we do with a potential misstatement of law when that misstatement of law was the basis that the affiant said was the reason why we wanted to search the phone? So I don't believe that the affiant misstated the law. What he stated was that based on his training... If the district court said you have to use it, I would be very surprised if Mr. Larson would say that that was the standard. But what becomes, I think, the tricky issue... And maybe he will, and he can. He'll maybe think I've got it wrong. But what I think is the tricky issue is that the affiant did not say there's going to be evidence of it because it'll say X, Y, or Z. He said, in my experience, they use the phone to do A, B, and C in connection with the crime. So given the mistake of law that the district court, I believe, articulated, how does that jive with the fact that it was responsive to what the warrant specifically said why they wanted it? I think, stepping back, the warrant does two things apart from the training and experience. It does identify facts that the district court did not countenance, but that the magistrate judge did, which is that there was no arrow keys found when the home was searched. I'm sorry. So I just want to make sure I understand the government's position is that failing to turn up evidence in one search is by itself probable cause to search elsewhere. Is that the position that you're asking us to adopt in this case? I'm not asking your honor to adopt this on a categorical basis. The government is merely suggesting in this instance that this allowed the magistrate judge to assess that there was a fair probability that there would be evidence on the phone, and it's because of the inherent value of arrow keys. Arrow keys are designed to open up relay boxes, and millions of dollars could be stolen from relay boxes over the course of months, years. It is not uncommon for mail carriers to be robbed of these arrow keys. No, I agree, and I would have thought that the argument would have been we need to search the phone because we saw him on it beforehand. That means he was probably surveilling and looking for when the carrier was coming by and trying to coordinate where people were. At least there's reason to think that, but that wasn't the theory of the opiate. The theory of the opiate was we didn't find it when we looked at, you know, when we searched the house. And my experience is thieves use crime, use phones to commit crimes. Well, yes, that was one component with the second component to return to is what you just highlighted, which is that he is seen on surveillance two hours before the first robbery on his phone. And that does two things, Your Honor. That first puts the phone in his hand such that, as the affiant noted in the warrant, there is a reasonable basis to or a fair probability, I should say, that location information would be on the phone. Right. But you don't need the phone for location information, right? Like, if you really were just trying to establish that he was there, you could get logs, right? And cell phone tower pings and all this other stuff. Is that right? Well, you would be able to get a cell site location information warrant, but that would still require a warrant. It would not be something that you would be able to get by subpoena or deorder. It would still require a warrant. And in this instance, the affiant believed that the phone would contain both the location information as well as evidence of the selling, counterfeiting, otherwise. But not the robbery, right? What do we do if perhaps it would have been probable cause of the robbery because he was using it to surveil? But there's nothing about that in the warrant. The warrant does say that they do recognize that individuals do use their phones to surveil relay boxes of when they could. Right. Not the person they're robbing. But not the person that they're robbing. And I think here what the affidavit does recount is, at least for the second robbery, the defendant saw, as he was walking, a mail carrier doubled back to follow her. It was a crime of opportunity in the second instance, but it was a crime of opportunity that happened because of how lucrative it was that the defendant was able to steal an arrow key and stole an arrow key on September 30th and then again two weeks later, ratcheting up the violence. I really think that the application and the warrant authorized the agents to search for evidence of how the stolen arrow keys were disposed of. Yes, Your Honor, that was one of the items that the affiant itemized, that it was text messages and phone call logs, particularly scoped to the date September 29th, the day before the first robbery through the date of the arrest. 21 days in total, looking for phone call logs and text messages that included how the arrow keys would have been either sold, pawned off, sent to a confederate, otherwise used. But the important thing I want to highlight for Your Honor is the fact that reasonable minds can differ on probable cause. The Supreme Court has held this. This court has held this. And in those close cases of judgment, that is when the good faith exception applies. The good faith exception applies so that an officer who is operating under good faith, and here you also know he operated under good faith because when he saw that there was additional evidence, he respected the scope and contours of the search warrant and sought a supplemental search warrant. Okay, counsel. Thank you. I think we're going to get to hear from you again. And so I think we'll go ahead and hear from your front and other side of the aisle. Thank you. Attorney Larson. Good morning, Your Honors. Matt Larson of the Federal Defenders for Mr. Santos. Judge Perez, I think you hit the nail on the head. This is a case where they didn't find anything in the place where there was a reasonable chance of finding it, so they said let's go somewhere else where we have no basis to look, the smartphone. They have every basis in the world to look at the smartphone. Basic common sense. The threshold assumption was they went into the room. They didn't find the stolen arrow keys. The assumption is he moved them, and the assumption layered on that is that he used the cell phone to identify buyers, to identify sources who might be interested in purchasing them. Respectfully, Your Honor, the law calls not for assumptions but for particularized facts. In this case, the warrant application identified no facts indicating that the cell phone either played any role in the alleged robbery or would contain evidence of the alleged robbery. How can you be blind to the way the world works to accept that assertion? Half the people in this country have cell phones, and if he's going to move the stolen keys, he's going to – it seems to me to be a perfectly reasonable, conservative assumption that he's going to use his cell phone. So searching the cell phone would give him – could possibly give the police names of individuals to run. Was this person incarcerated with Santos? Does he have a record? Does he – etc., etc. So, interestingly, Your Honor, the position you're describing has been rejected by the Department of Justice. In the 28J letter that I filed on Friday regarding the Silva case, where, as here, it was a government appeal with suppression of material found in his cell phone, the court there asked the government lawyer, So what does a bare-bones affidavit look like? If it just says, we believe there's going to be criminality on the phone, but there are no facts to substantiate that. Yes, Your Honor. Judge Perez, you followed up with a question. What if the affiant had said, based on my experience, I believe we're going to find something on the phone? No, Your Honor, the government said, because saying, based on my training and experience, I believe a crime has been committed and evidence will be found, is not detailed enough. Again, Judge Menasche returned to this theme, saying – this theme of saying, based on my training and experience, I think a crime has been committed, and there's going to be evidence on the phone because, as Your Honor just described, everybody has a phone. Government counsel himself said that, in that case, the officer did not bring the facts. It's just saying, take my word for it. And that's the circumstance where the Supreme Court has said it's no good. The question – What if the affidavit should be fairly read as, based on my experience, people who steal arrow keys and don't have them at home tend to use them, tend to sell them using the phone? Would that have been enough? I know, Your Honor, because I think that would go back to the question you asked Ms. Shami, which is, if they don't find the keys in the place where there's at least a reasonable chance of finding it, namely his home, do they then get to look into his smartphone, which contains all the privacies of his life, and where there are no facts in this case indicating that his phone had any connection whatsoever to the alleged robberies? What do we do about the fact that the district court seemed to conflate the idea of instrumentality versus evidence of? Respectfully, Your Honor, I would like to push back on that. I do not believe that the judge misunderstood the law. She said, to establish probable cause, there must be sufficient factual matter particularized to the defendant that nudges – So there were a couple places where the correct standard was articulated. There were a few places where it was not. And just the same thing with the misled and not misled. They're reasonable things, but I was hoping that you could tell me, assuming that she had had the correct standard and she was just using the word use as shorthand for evidence of, why would that not be sufficient? Yes, so the shorthand thing. This also came up in the Silva argument where you were present, Your Honor, where the government tried to make this argument that the judge there also misunderstood the law and said the phone has to be part of the crime. Judge Menashe said, no, no, no, the judge was using shorthand. The judge did not misunderstand the law. The same thing here. The judge said in multiple places in the record that if there's evidence of the crime likely to be found on the phone, there's probable cause. It doesn't have to be used in the robbery. But the fact of the matter is that in this case, there are no facts in the affidavit indicating a probability that evidence of the alleged robbery would be found on the phone. For all the facts show, Your Honor, if Mr. That assertion you made, as far as I'm concerned, would hold water in an alternative universe. But we're dealing not with the – the issue here is whether the officer had a good faith basis for relying on the warrant. And based on his experience and training and threshold common sense, the cell phone is likely to – there's a strong probability that the cell phone would supply information concerning the disposition of the stolen property. And if he hadn't – if no one had looked at the cell phone, I'm not sure what else could have been said. But, I mean, it just seems to me that common sense would lead you to look at the cell phone and see what happened to all the stolen merchandise. Your Honor, what else could have been said are things like this. We got a warrant for his cell phone records. We found a flurry of calls to other people around the times of the robbery. We interviewed the people who lived with him, and they told us he's on his phone all the time, and especially after he came home, just after the time of the robbery. The affiant could have said we had a custodial interrogation of Mr. Santos, and here are the things that he said indicating we have probable cause to look at his phone. None of that is in this case, Your Honors. So can you just specify – I mean, the facts that you thought could have been deduced are helpful, but, like, what about the warrant itself makes it facially division? Is it the breadth of the property to be searched? Like, what – where is the problem? If Your Honor is referring to my second point, they are connected. In a case like this, it is essentially this man is suspected of a crime, even though the crime has nothing to do with cell phones and it's not a conspiracy. He acted alone, but because people in society today have cell phones, we want to look in it. That is not probable cause, Your Honors, respectfully. That is not a basis to look into a repository of the most intimate details of someone's life. There have to be facts indicating a reason to go combing through something so personal as a smartphone. What about the argument that on its face it was limited – it wasn't free reign to march through the cell phone. It was limited to the handful of itemized things on the cell phone, location information and communications information. On top of a date restriction. Yes, those were the items authorized to be seized. The warrant imposes no restriction on what may be searched. And in the section about what may be seized, it says records relating to the alleged robberies, including – and then those itemized. So that's the basis for the argument. So we should understand the warrant to say you can search to your heart's content and here's the things you can seize. You can comb through the most intimate details of this man's life in hopes of finding something to convict him. Now this court has recognized in the Galpin case, in the Ulbricht case, in the Loria case, that special sensitivity has to be applied to something like the search of a smartphone given how much personal information it contains. Searching a smartphone in this day and age is more invasive than searching someone's home. And so this court has said special sensitivity is needed. There was none shown here. This officer – pardon me. This officer conducted a search of Mr. Santos' house, found no arrow keys, and then said, well, let me look in his phone. Now, he identified no facts reasonably indicating a probability of finding evidence on that phone. If it's simply people use phones, then I think we're in a different place than where the law is today. The law requires particularized facts, not assumptions or guesses or hunches or hopes. This is a really basic question, but you referred to they could have gotten a warrant to get the information about who else he called. I think the government said – or I think in the briefing it said could have gotten a subpoena. Is that a – to get the phone company to turn over the – here's the calls that were made. Is that a warrant or a subpoena? The CSLI, I think, Your Honor, that there are both ways of – I think there are both subpoenas and warrants for this phone company that you can do. I think it's depending on the detail of information that you want for the cell site location information. No, no, not the cell site location. I'm talking about so that you could discern, for instance, whether there was a flurry of communications after this happened, a flurry of communications that involved known fencers or things like that. And I'm just trying to figure out whether that kind of information would require a warrant from the phone company, in which case we're in the same box, the fact that it would be – it might be a narrower search, or whether that could be obtained by subpoena, in which case there's an argument. Why wouldn't they have gotten that to support their probable cause here? The answer is I don't know because I'm not an expert. My guess is if it's simply location data CSLI, you can go to a phone company, depending on how detailed the information that you want is, it might be a subpoena, it might be a warrant. But if you're looking for, like, who did he call and when, I think then you need a warrant for sure, for sure. Okay. That answers my question. Thank you. So, can I ask, what if the client had said, we saw him on a phone right before, and it looks to me like, based on my training experience, that he was searching for the person he was about to rob, the postal worker. Would that be different than a situation in which you're like, oh, we didn't find it because we found the phone? Because we didn't find it in the house. This came up in Loria, Your Honor, which Your Honor was on. The court there in Loria said that, you know, if the person's cell phone had initiated a call within minutes of the robbery, and made and received a few other calls around that time, that might provide a reasonable basis to search the phone, but probability diminishes as the call becomes more temporarily remote. So here we don't have evidence of a call within minutes. Here we have evidence that in his own neighborhood. Okay. So it sounds to me like you're quibbling over whether or not this was in the time because it was long enough, but let's assume the timing was appropriate. Did the client need to say that particular theory, or is it like in other situations in which there is a way to read it, and the fact that it talks about the planning, and it talks about surveilling? Are we allowed to construe it broadly to say that there is a plausible, acceptable reason for why they would have wanted the phone? Or do we have to stick with the theory that the affiant gave us as to why there might be evidence of the crime? I think the law is clear that the burden is on the government to establish probable cause. The burden is on the government to show good faith reliance. And here the affiant did not identify any facts indicating that there was probable cause for a wholesale search of Mr. Santos' phone. The evidence of his being on the phone two hours before one robbery in his own neighborhood goes at most to his being the perpetrator of the alleged robbery. It is not a justification for rifling through his smartphone because, again, this is not a case of conspiracy where he's talking to his confederates on the phone constantly planning the crime. No, but what if he was trying to figure out when the person was coming by that he could rob? I mean, my question is, does the theory have to be right? I don't think that is. I didn't see that theory in their papers. No, that's my question. Right, I don't think this— Does the theory have to be correct, or is there a—because there is an acceptable theory, the affidavit is okay? Well, I want to make sure I understand Your Honor's question. I would disagree that there was an acceptable theory in this case. Okay, so I'm assuming that—let's assume for the sake of argument that the affidavit's reason of, you know, criminals use their phones to dispose of things and we didn't find it so it must be there, is unacceptable. If there is a third acceptable reason for why the phone would have been, i.e., we saw him on it beforehand, it's at least probable that he was using it to surveil when the postal person was coming. Does that need to be squarely articulated in the affidavit for an officer to have been able to— All facts supporting probable cause have to be squarely articulated. But I also—I just—perhaps I'm misunderstanding, Your Honor. I don't see how his being on his phone indicates that he's surveilling. Okay. You know, this is someone in his neighborhood in broad daylight allegedly who he robbed. I don't understand how, you know, if he's talking to someone two hours earlier on his phone in his own neighborhood— I mean, Loria—the defendant won in Loria, you know, and that was just asking for CSLI data. That wasn't this case, which is let's comb through everything in his smartphone. This is a much greater invasion of privacy than was at stake in Loria where this court ruled for the defendant. And I would submit, you know, Judge Merchant, she set out a long, detailed opinion explaining why there were no facts in this case. I understand Your Honor's point and I understand how someone in this day and age could say, well, everyone has a cell phone. There must be evidence on the cell phone. Respectfully, that's not the law, and if it were, I think we're heading in a dangerous place because we're then licensing the government to go into the repository of an individual's most personal and private information on a hunch that it has something. And that's simply not the law of probable cause or good faith. Thank you. Thank you. Appreciate your arguments. Ms. Shannon. Thank you. I want to return to several questions that Your Honor has posed to Mr. Larson here because I think that actually the answers might enlighten some of the discourse. In the first instance, if the government wanted to get CSLI, so cell site information, that is absolutely a warrant and that is Carpenter, a Supreme Court case, that found that a CSLI warrant is necessary for that kind of data because CSLI is like GPS for a phone. It is basically a tracker, and so there needs to be the standard of probable cause. On the other spectrum are toll records, which are phone calls that a person places and also text messages and the time and date of when those are placed. That is by a subpoena, but that's actually a point that I do want to raise here because to get a subpoena would take 30 days in the normal circumstance, and the government was acutely aware of its obligations under this court's precedent in Smith that because the phone had been seized, there was a clock running, and in Smith, this court held that 30 days was far too much time for the government not to have sought a warrant because there was probable cause. So the government viewed the totality of the facts present and made a good faith assessment that there was probable cause to search the phone. I do want to push back on one item that Mr. Larson noted about the 28J letter and what the U.S. government said in that argument. That is not quite accurate. Your Honors and Mr. Fiddleman were engaged in a colloquy about bare-bones affidavits, and bare-bones affidavits in particular are summarized in Morton, which is a Fifth Circuit case, and it's basically something that says, this person committed a crime, believe me, I want to search this thing or I want to arrest this person. That is all that it said. And so that colloquy about is that enough? No, it's not enough because there needs to be facts. And here there were facts. The totality supported a probable cause finding. What the district court engaged in was a dissection of each fact, looking at it in isolation. And, Your Honor, Judge Perez, you asked whether or not the probable cause needed to be correct or the inference needed to be correct. This court in, I'm going to mispronounce it, but I'll spell it, WALCZYK v. Rio held that probable cause does not demand any showing that a good-faith belief be correct or more likely true than false. It is simply that there is a fair probability that there could be evidence of the crime on the phone. And that is what Inspector Vernon assessed would be on the phone and, in fact, was correct. So fair probability, then, if we're talking about the good-faith exception, fair probability is some standard that's less than probable cause but more, where would fair probability fit on kind of the spectrum that we're familiar with? Is a fair probability that evidence would be found akin to reasonable suspicion that evidence would be found? And that's enough to get you past the good faith? No, Your Honor. Fair probability is actually how the Supreme Court enunciates what probable cause is. In Illinois v. Gates, the Supreme Court said... I thought you were offering it as a standard for good-faith exception.  That's just a way to conceptualize it other than the fuzzy standard of probable cause. All right, so let's assume that it's neither probable cause or a fair probability. Let's assume that the district court is right on whether this was, in fact, this affidavit did, in fact, establish probable cause. Is there anything more . . . I'm trying to figure out what the . . . If there's anything more than did they rely on it in good faith, is there some more standard that we can sort of apply to figure out whether the good-faith exception applies? Or is it simply a reasonable . . . Does it have to be a reasonable officer could have believed? Is it a subjective standard or an objective standard? It is an objective standard, Your Honor. And here it is whether a reasonably well-trained officer would have looked at the face of the warrant and determined that he couldn't execute it. But this court in Falso and Councilmo has found that an officer in possession of a duly signed warrant is absolutely reasonable in executing it. Right, but so I'm worried about that position because that position makes it sound like any time that there's a magistrate judge approval, you get the good faith. And I don't know how . . . unless the officer lied. I mean, I think that that is sort of how I read your briefs. But Leon has other exceptions. So it cannot be the case that every time a magistrate judge signs it, that means that a reasonably well-trained officer would believe it. So how do we calibrate this correctly to make sure that we're not opening the floodgates to just saying if you can get a magistrate to sign it, you're off the hook and you therefore don't have to use your reasonability and you don't have to use your training to make sure that it's sufficient. Yes, Your Honor. So Leon, which is the Supreme Court case that outlined the four circumstances under which a good faith would not apply, does articulate that the good faith exception is going to apply in more cases than not. It is the rare case. And the four circumstances are very narrowly circumscribed. I agree. So I'm very aware of what Leon says. I'm asking you to help me figure out where is the line between what I understand or what I read the briefs to be, which is basically if a magistrate judge signed it and they weren't lied to, and the fact that there are other ways that the good faith exception might not apply. Well, yes, Your Honor. I guess in the instance that is presented before us, which is whether it's a bare bones affidavit, the law on what a bare bones affidavit is very clear. It is a paragraph or two, and that's like Nathanson, that's Aguilar, that's Giordanello, those kinds of warrants that basically just put the individual's crime and that there is an incipient search or arrest that the officer wants to exercise. Here, that's not the case. This was a 17-page warrant, 13 pages of facts. But let's focus. I mean, nobody's challenging the probable cause to arrest this gentleman, right? The only question is the search, and as I read it, at most there are three paragraphs, but really only one paragraph that seems substantial to me that addresses this, and it boils down to criminals who steal these things do something with them, and if we can't find it in their apartment, my training tells me they've probably used their cell phone to arrange whatever they did with it. I mean, that is the sum and substance of the, no matter how many other pages it's buried in in terms of the probable cause of the crime. Am I missing something in understanding that to be the... Yes, Your Honor, it's because that is what supports the two requests in the search warrant to look at phone logs and text messages. The information about the phone being in the defendant's hand two hours before is in support of the location data, and in that way, what the affiant did was connect his facts to the spaces that he wants to search. I also want to... But the location data, if your theory was that the location data was to show us where he was at the time of the two robberies, I think that would be a pretty strong case, a very strong case for you, but the location data here is every place that he's been from the time of the first one until the time of the warrant, so it's not simply saying that because he was using this cell phone that morning, we have reason to believe it's going to help us locate where he was at the time of the robbery. You're extrapolating that to everything that happens thereafter, which I think has to tie into your other theory, which is that once we know that he's... Once we have probable cause to think he's stolen this key, he's going to have done something with it, and the location data will tell us maybe where he's been and who he's been with, just as the communications data will tell us who he's talked to. The location data would certainly give both of those things. It would give his location at the robberies. It would give his location in meeting with a confederate to sell the arrow key. It would also give... So I understand the theory. I'm trying to net on the basis for it, and I think what I'm hearing is largely what my colleague has described as a common sense inference, that if we have probable cause to think we stole the key and we didn't find the key, that's enough to get to the phone. I think in this instance there's also the inference that the court, the magistrate judge was able to draw based on training and experience and what Judge Parker noted, and that's because this is a particular category of crime. Arrow keys are not legal for a random person to own, and it's because of the value that is unlocked in a relay box. Same with stolen mail. It is not legal to possess those things. It is conceptually similar to narcotics because to own an arrow key, to have stolen mail, those are all illegal activities, and the Ninth Circuit in United States v. Saney accepted expert testimony from a United States postal inspector on these topics because this category of crime is quite specific. There are individuals who are selling and counterfeiting arrow keys online. They're selling stolen mail online, and this is the kind. One more question if I may. Your colleague made a distinction between the limits on the warrant to be seized and the lack of limits is how he characterized it on to be searched. Is that something legally significant to us? Can you articulate your view on whether or not that matters? Yes, Your Honor. I think that this boils down to a misunderstanding on Mr. Larson's part about how warrants are structured. Warrants are structured with an attachment A and an attachment B. Attachment A simply identifies the thing to be searched, and that is here, the phone. Attachment B, even though it's called property to be seized, that circumscribes the search. It is what tells the officer what he's permitted to look in. So importantly here, the officer was only able to look at phone call logs, text messages, pictures, and location information. So you're describing, I guess, a customary understanding of the warrant. If I were to look at the warrant as uninitiated, it seems to allow search without the constraints that you're applying. I'm not really sure what seizure means when we're talking about intangible digital data, but how is it that an officer is to know that they're constrained to only look for the things on that second list when, in fact, they found things beyond that list here, right? That's why we're here, I assume. Yes. So it is based on their training. When they become law enforcement officers, they're told this is how you execute a search warrant. The attachment B is the parameter. Okay, so there's not a case that tells that this is. But at the same time, Your Honor, I want to highlight this circuit's decision in Riley, which basically stood for the holding that, you know, evidence of my crimes, there is some latitude that is expected and given to officers, and that's why they're able to search. What do you make of the word including? I agree that there are limits in attachment B, but it does use the word including. It's not an exclusive list, and especially when – so why don't I let you answer that? Yes. I mean, while that is the phrasing in the warrant, that's just sort of the boilerplate phrasing that is in attachment B. But an officer looking at attachment B knows that he's circumscribed by what is contained in attachment B, and if he has any desire to look past it, he needs to get another warrant and articulate probable cause to look there. As an example, Inspector Vernon would have had no basis to look in any of the cash app applications because he had not yet established that that was the mechanism by which he was paid for the arrow key. He was limited. Phone call logs, text messages, location information, pictures. So he couldn't have looked at the Tinder app or the –  Under this warrant, even though the search – even though A just says search the phone? Well, that's also because of the way that technologically a search of the phone happens. You basically have a phone. It gets collected via a mechanism called Celebrate, and it's the whole extraction. But then you are limited in what you can look at. You can look at text messages, but only for the particular date that was circumscribed in the search warrant. And only because that text message communication showed that it actually predated the dates, that is what was one component of the supplemental search warrant that the government then requested. Okay, so just to be crystal clear on this, because I am very interested in the question that my colleague raised about the idea of, like, we're not even sure what it means to seize bytes. But, like, your representation on behalf of the government is that attachment B should not – should be understood as a limit to the search. Yes, Your Honor. Okay. Thank you. Appreciate your arguments. We'll take this matter under advisement. Thank you both.